**Hearing Date & Time**
                                     October 20, 2015 @ 10:00 am

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
In Re:                                                    Chapter 11

**STAGE PRESENCE INCORPORATED,**          Case No.: 12-10525 (ALG)

                                Debtor.
-----------------------------------------------------------X

## APPLICATION OF SHAFFERMAN & FELDMAN LLP FOR A FIRST INTERIM AWARD OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL FOR THE DEBTOR

TO:    THE HONORABLE MICHAEL E. WILES,
          UNITED STATES BANKRUPTCY JUDGE:

        The application of Shafferman & Feldman LLP (õApplicant"), as counsel to Stage Presence Incorporated, the debtor and debtor in possession (the "Debtor"), for a First Interim Award of Compensation for Services Rendered and Reimbursement of Expenses incurred in the above-captioned case (the "Application"), respectfully alleges:

        1.    This Application is made pursuant to sections 330 of title 11 of the United States Code ("the Bankruptcy Code") for a first interim allowance of compensation for professional services rendered and for reimbursement of expenditures necessarily incurred by Applicant in its representation of the Debtor during this Chapter 11 case for the period extending from **February 9, 2012 through September 19, 2015** (the õInterim Compensation Periodö) for fees, in the amount of **$39,260.00**, and for disbursements, in the amount of **1,189.58.**

2. Pursuant to an Order of this Court, dated April 3, 2012 this Court authorized the Debtor's retention of Applicant as its Bankruptcy counsel (Docket #15). This order further provided that compensation for Applicant, as attorneys for the Debtor, shall be fixed by this Court after application in the manner prescribed by sections 330 and 331 of the Bankruptcy Code.

3. Applicant has received no compensation for the services set forth herein subsequent its retention except that it received a retainer, in the amount of $2,737, along with the filing fee $1,046.

4. Members and associates of Applicant have been duly admitted to practice in the Courts of the State of New York, as well as the United States District Courts for the Eastern and Southern Districts of New York.

5. Applicant brought its specialized expertise and the confidence engendered by its good reputation to this case, which was required in order to provide counseling with respect to the myriad of problems which confronted the Debtor as well as the spirit of cooperation needed to evolve into a viable reorganization.

6. All of the services for which Applicant seeks compensation herein have been rendered on behalf of the Debtor, and not on behalf of any creditor, any committee or other persons.

7. Applicant's services were required on a regular basis in representing the Debtor. In addition, this application sets forth the more significant matters addressed by Applicant in its representation of the Debtor.

8. Annexed hereto as **Exhibit "A"** are the time records accounting for the time expended by Applicant herein in consecutive order by date and then described by those applicable ten

(10) specific project billing subsections; (1) case preparation; (2) case administration; (3) financing/cash collateral issues; (4) asset disposition; (5) claims; (6) plan, disclosure statement and exclusivity matters; (7) employment applications; (8) business operations; (9) litigation; and (10) relief from stay proceedings. These time records were made contemporaneously in the ordinary course of Applicant's business and reflect that during the relevant time period **120.80 hours** of time was expended by Applicant in performing services for the Debtor.

9. Applicant regularly maintains records detailing expenses incurred in connection with the rendition of legal services. On the final pages of the billing records annexed hereto as **Exhibit A** is a schedule prepared from Applicant's office records setting forth the expenses and advances posted from and incurred in connection with the services rendered by Applicant for the Debtor. The expenses and advances aggregate the sum of **$1,189.58**

10. Applicant respectfully submits that the work performed by Applicant herein has been substantial and that the professional services rendered by Applicant significantly and materially contributed to successful results of this Chapter 11 case.

## **Background of The Debtor**

11. The Debtor is a New York State corporation in operation since October 1985. Its primary business is television production, with occasional work in film and corporate events. During its existence it has produced 200 (plus) programs and/or events for many well-known television networks and corporate brands.

12. With only one exception in more than 25 years, every invoice has been paid on-time for every project. It is the one exception that causes Stage Presence to file for relief under Chapter 11 of the Bankruptcy Code.

**The Evening of Hope Event and Funding Agreement with GIT**

13. Early in 2010, Mr. Newman was contacted by Matthew Weiner and Gregory Marquette, long time colleagues of his, about assisting with a benefit event for Childhelp® (501c3), an organization devoted to issues of child abuse, which had already engaged entertainer David Foster for a performance. Mr. Newman agreed to produce the show. One of Newman's firms, One From Each Island, Ltd., entered into a production agreement with Childcare to produce two events, one in the US and one in the Caribbean. The agreement identified Messrs. Newman, Weiner, and Marquette as Producers and stated that they would undertake efforts to raise funds through sponsorships and other means to produce the events.

14. On April 13, 2010, the first event, entitled An Evening of Hope: A Concert for the Children (the õProgramö) was stage, recorded for television and broadcast on Black Entertainment Network within a few weeks of the live event. The second event did not go forward and is not at issue here.

15. Since funds were needed in order for the Program to proceed, Mr. Marquette asked Mr. Menner whether GIT could provide underwriting support, and Mr. Menner agreed. In soliciting support for the telethon, Mr. Marquette told Mr. Menner and Mr. Bartholomew, as Trustee of GIT, about the performers and celebrities who were expected to participate, and represented that a bridge lender and sponsors were standing by.

16.  The agreement to provide production funds was memorialized in a Television Production Loan Agreement dated April 4, 2010 (the "Loan Agreement"). The Loan Agreement was prepared by Mr. Marquette and executed by Mr. Newman, on behalf of Stage Presence and Mr. Bartholomew, on behalf of GIT. In the Agreement, GIT undertook to provide a production loan of "not less than five million dollars" for the purpose of producing the television specials. The Agreement required that the shows' producers repay the loan within six months.

17.  Before and after the April 13 Program, Mr. Newman sent urgent requests for funds to Messrs. Bartholomew and Menner. The requests included an itemized expense "invoice" dated April 13, 2010, for more than $2,200,000, and in later months, detailed letters with threats of legal action by individuals, unions, and business entities that had worked on the April 13 production and remained unpaid.

18.  GIT and Mr. Bartholomew failed to remit any funds to Stage Presence and never even responded to Mr. Newman's letters. However, on several occasions, GIT and Mr. Bartholomew asked Mr. Newman to advance funds to cover purported "bridge loan costs", stating that the funds would be held in escrow pending the release of two $500,000 loans from GIT to Stage Presence. In response to these representations, Mr. Newman sent a total of $80,000 to GIT and Mr. Bartholomew, but neither GIT nor Mr. Bartholomew ever funded its promised loan.

19.  Despite Mr. Newman's advancement of funds to GIT for purported bridge loan costs, and his continued pleas, Stage Presence never received any funding from GIT.

**Commencement of Federal Court Action**

20.  As a result of the events described in paragraphs 9-15, on or around August

5

18, 2010, certain vendors involved in the "Evening of Hope" event commenced an minimum wage claim action entitled <u>Tina Magnuson, Allen Kelman, Erica Zolberg, RZ Video Consultants, Inc., Jeffrey Pearl, Lyn Noland, Michael Grimes, Matthew Randazzo, Robert A. Del Russo, David A. Smith, Michael Appel, Diana M. Barton, Sylvia Davis, Garth Michael and Bryan Leskowicz –against- Allen Newman, Matthew Weiner, Gregory Marquette, Stage Presence Incorporated, and One From Each Island, Ltd. (Case No. 10 Civ. 6211)</u> that prior to its settlement was pending in the United States District Court for the Southern District of New York (the "District Court Action") seeking, in part, to recover the amounts that were due and owing to them on account the unpaid services they rendered and goods they supplied in connection with the "Evening of Hope" event**1**.

**Stage Presence's Commencement of Chapter 11 Case**

21. In order to preserve its assets for creditors and save its long standing business, on February 9, 2012 (the "Petition Date"), Stage Presence filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

22 On March 27, 2012, the Office of the United States Trustee appointed a Committee of Unsecured Creditors in this case (the "Committee"). The members of the Committee are KZ Video Consultants, Inc. and Alan Adelman. The Committee has not as yet retained counsel.

23. Since this is a "small business case", the Debtor was required to file a plan of reorganization and disclosure statement within the first three hundred (300) days after the commencement of this case. Therefore, on December 3, 2012, the Debtor timely filed a plan of reorganization and disclosure statement with this Court. [Case Docket Nos. 31 and 32].

---

1 As set forth in paragraph 37 <u>supra</u>, this action was thereafter settled by Mr. Newman, and other individual defendants

6

**Debtor's Commencement of An
Adversary Proceeding Against
<u>Geneve and Other Defendants</u>**

24. The principal means of implementation of the Plan is the recovery by the Debtor in its adversary proceeding entitled <u>Stage Presence Incorporated v. Geneve International Trust, Ronald L. Bartholomew, Trustee, and Stephen Menner</u> (Adversary Proceeding Number 12-01561) which the Debtor commenced July 16, 2012 (the "Adversary Proceeding").

25. The parties to the Adversary Proceeding agreed to have the dispute decided by an arbitration proceeding conducted under the auspices of JAMS. One of JAMS' neutrals, Vivien B. Shelanski, Esq., was selected as the arbitrator (the "Arbitrator").

26. Beginning September 2, 2014, the Arbitrator duly conducted a hearing, at which time the parties duly appeared and submitted their proofs. Mr. Bartholomew and GIT at no time objected to the jurisdiction of the arbitrator or the propriety of said arbitration.

27. The controversies as submitted to the arbitrator by the Debtor, Mr. Bartholomew and GIT included all matters in dispute between them related to the Program and Loan Agreement, and alleged breach of contract and fraud against Mr. Bartholomew and GIT.

28. The Arbitrator after hearing the parties, and studying the facts, circumstances and proofs submitted by the parties, duly arrived at a decision and award on October 6, 2014.

**Arbitration Award and Debtor's Efforts to Enforce Award**

29. The Arbitrator determined that GIT was liable to the Debtor for breach of contract, in the amount of $487,061.00 (the "Award"), broken down as follows: a) $173,606.00

---

paying $164,740.57.

representing the amount paid in settlement of the pre petition action entitled <u>Magnuson et al v. Newman et al,</u> 10 Civ. 6211 (JSF) pending in the United States District Court for the Southern District of New York (the "District Court Action"); b) $243,455.00 representing a judgment entered in the arbitration; c) $50,000.00 in attorneys' fees; and d) $20,000.00 in costs (the "Arbitration Award").

30. On or around May 31, 2015, the Debtor filed a proposed judgment with the Clerk of this Court pursuant to 28 U.S.C. §§ 654 and 657 (ECF#72). The judgment, in the amount of $487,061 was entered by the Bankruptcy Court on July 14, 2015 (the "Judgment").

31. Subsequent to the issuance of the Judgment, GIT, Mr. Barthomew and Mr. Menner have refused to voluntarily satisfy the Judgment. Therefore, the Debtor has commenced discovery to locate monies funds to satisfy the judgment, and therefore, fund the Plan.

32. On July 17, 2015, this Court issued an Order authorizing the Debtor to conduct a Rule 2004 examination of GIT, GIC, Bartholomew and Menner (ECF# 122). The Debtor is in the process of conducting this examination.

33. Although the Debtor's special litigation counsel, David Wims, Esq., represented the Debtor in connection with the prosecution of the Adversary Proceeding, Applicant assisted Mr. Wims and the Debtor wherever necessary. Applicant also prepared the Debtor's filed plan and disclosure statement as well as the rule 2004 examination papers that have been filed to aid in the enforcement of the judgment.

34. Applicant, in its capacity as general bankruptcy counsel, also advised the Debtor that in order to remain under the protections afforded by the Bankruptcy Code, it had to continue to

comply with the duties imposed upon all Chapter 11 debtors by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the guidelines promulgated by the Office of the United States Trustee. Applicant assisted the Debtor in meeting these obligations.

35. It is virtually impossible to set forth the specific details of each and every item of services rendered by Applicant in this case. Although the time records annexed hereto specify most of the services rendered herein by Applicant and include the many telephone calls between Applicant, the creditors, and other interested parties, they cannot fully reflect all of the time actually spent in dealing with this case.

36. Applicant respectfully submits that the reasonable value of the services rendered, which are described herein, and which are set forth on Exhibit A annexed hereto, is the sum of **$39,260.00** together with reimbursement of actual and necessary disbursements in the amount of **$1,189.58.** Applicant, as fully disclosed, has received no prior compensation for the services rendered during the Final Compensation Period.

### **APPLICABLE LEGAL STANDARDS**

37. The perspective from which an application for allowance of compensation should be viewed in a bankruptcy case was aptly stated by The Honorable Don Edward, Member of Congress, on the Floor of the House of Representatives, on September 28, 1978. The following statement was made in relation to Section 330 of Title 11 of the Code:

> "(Attorneys') fees in Bankruptcy Cases can be quite large and should be closely examined by the Court. However, Bankruptcy legal services are entitled to command the same competency of counsel as other cases. In that light, the policy of this Section is to compensate attorneys and other professionals serving in a case under Title 11 at the same rate

9

> as the attorney or other comparable service other than in a case under Title 11. Contrary language in the Senate Report S.2266 is rejected, and <u>Massachusetts Mutual Life Insurance Co. v. Brock</u>, 305 F.2d 429, 432 (5th Cir. 1968) is overruled. Notations of economy of the Estate and fixing fees are outdated and have no place in a Bankruptcy Code." 124 Cong. Rec. H11089 (Daily Ed. Sept. 28, 1978).

38. Although the Supreme Court has not ruled on the proper method for determining reasonable fees under Section 330(a), the Court has established guidelines generally applicable to awards of attorneys' fees under other federal statutes, which require that the fee awarded be reasonable. See <u>Pennsylvania v. Delaware Valley Citizens' Counsel for Clear Air</u>, 478 U.S. 546 (1986) (construing standards for award of fees under § 304(d) of the Clean Air Act ("Delaware Valley I"); <u>Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air</u>, 483 U.S. 711 (1987) ("Delaware Valley II"). In <u>Delaware Valley I</u>, the court concluded that the "lodestar" approach to determining the fees for services performed, as articulated in <u>Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.</u>, 487 F.2d 161 (3rd Cir. 1973), was preferable to other, more subjective methods: "[T]he 'lodestar' figure includes most, if not all, of the relevant factors comprising reasonable attorneys' fees." <u>Delaware Valley Citizens' Counsel for Clean Air</u> at 565. Courts in this Circuit have generally followed the lodestar guidelines for fee awards. <u>In re United States Football League</u>, 887 F.2d 408, 413 (2d Cir. 1989); <u>City of Detroit v. Grimmel Corp.</u>, 560 F.2d 1093, 1098 (2d Cir. 1977) ("Grinnel II"); <u>City of Detroit v. Grinnel Corp.</u>, 495 F.2d 448, 471 (2d Cir. 1974) ("Grinnel II").

39. <u>Lodestar</u>. Under the lodestar calculation, a reasonable hourly rate is set by the court based on a number of factors, including the difficulty of the task, the prevailing market rate for

10

counsel of the petitioner's experience, counsel's normal billing rate, and the rates awarded by other courts in similar circumstances. In <u>Grinnel II</u>, the Second Circuit calculated attorneys' fees by "multiplying the number of hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area." <u>Grinnel II</u> at 1098. Once the base or "lodestar" rate is established, "other less objective factors such as the risk of litigation, complexity of the issues, and the skill of the attorneys, could be introduced to determine a final fee amount." <u>Id.</u> The American Bankruptcy Institute favors the lodestar approach as "giving the courts a simple mathematical formula to apply as the starting point for the analysis, with the reasonableness inquiry narrowed principally to the hourly rate and time spent factors." <u>American Bankruptcy Institute National Report on Professional Compensation in Bankruptcy Cases</u> (G.R. Warner rep. 1991) p. 144.

40.  The first step to be taken in a lodestar analysis is to determine the nature and extent of services rendered. As is set forth more fully in the foregoing paragraphs, and in Exhibit "A", during the Final Compensation Period, Applicant expended a total of 120.80 hours in rendering legal services to the Debtor. Applicant respectfully submits that the hours worked by Applicant were both reasonable and necessary.

41.  The next step to be taken is to establish a reasonable hourly rate. Section 330(a) of the Bankruptcy Code provides for the award of reasonable compensation for actual and necessary services performed by professionals employed pursuant to Section 327 and 1103 of the Bankruptcy Code "based on the time, the nature, the extent, and the value of comparable services other than in a case under this title." See also <u>Collier on Bankruptcy</u> ¶330.02, p. 330-12 (1st Ed.

11

1996). The Bankruptcy Code thus rejects the "principle of economy" which existed under the Bankruptcy Act. "Notions of economy of the estate in fixing fees are outdated and have no place in a Bankruptcy Code." 124 Cong. Rec. 11,0899 (daily ed. Sept. 28, 1978) (statement of Congressman Edwards on policies underlying Section 330). In re Bible Deliverance Evangelistic Church, 39 B.R. 768, 774 (Bankr. E.D. Pa. 1984); In re Penn-Dixie Industries, Inc., 18 B.R. 834, 838 (Bankr. S.D.N.Y. 1982).

42. Indeed, Congress has made clear that the fees paid in bankruptcy cases must be no less than those paid in other cases involving legal specialties with comparable complexities and responsibilities: "Bankruptcy specialists . . . if required to accept fees in all of their cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field." H.R. Rep. No. 595, 95th Cong. & Admin. News, p. 5787. Consistent with the intent of Congress as expressed in the legislative history of the Bankruptcy Codes, it is "necessary to compensate bankruptcy attorneys, whenever possible, at the highest rate of compensation available for their efforts." In re Bible Deliverance Evangelistic Church, supra, 39 B.R. at 773. See also In re Penn-Dixie Industries, Inc., supra 39 B.R. at 838 (a liberal standard of compensation is needed to "encourage successful administration of estates by attracting bankruptcy specialists of high quality"). In sum, Congress intends that allowance of professional fees in bankruptcy cases should be at market rates in the market in which they customarily practice. In re Jenson-Farley Pictures, Inc., 47 B.R. 557, 578-79 (Bankr. D. Utah 1985).

43. The rates being charged by Applicant are equal to or below those typically charged by Applicant and other firms in the Southern and Eastern District of New York as well as

12

those of other firms specializing in bankruptcy matters. Accordingly, the Lodestar amount of fees sought by Applicant (its customary hourly billing rate multiplied by the reasonable and necessary amount of time spent) is both reasonable and appropriate.

44. <u>The Johnson v. Georgia Highway Test</u>. The lodestar calculation has largely supplanted the twelve factor test of <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), which had gained prominence under the Bankruptcy Act. See <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,</u> 478 U.S. at 546 (1986). ("The lodestar figure includes most, if not all, of the relevant factors comprising a 'reasonable' attorney's fee"); <u>In re Cena's Fine Furniture, Inc.</u>, 109 B.R. 575, 581 (Bankr. E.D.N.Y. 1990) (the Supreme Court makes clear that the lodestar amount is presumed to subsume the twelve factors articulated by 109 B.R. 575, 581 (Bankr. E.D.N.Y. 1990) (the Supreme Court makes clear that the lodestar amount is presumed to subsume the twelve factors articulated by <u>Johnson</u>); <u>In re Paster</u>, 199 B.R. 468, 469 (E.D. Pa. 1990) (the lodestar method of fee calculation is the appropriate method of determining attorney's fees in all federal courts, including the bankruptcy courts). The Supreme Court, in another context, acknowledged that the lodestar was the "centerpiece" for the computation of a reasonable hourly rate; however, the Court suggested that the twelve <u>Johnson</u> factors could be considered for adjustments to the lodestar calculation. <u>Blanchard v. Beraeron</u>, 489 U.S. 67, 74 (1989).

45. A number of courts do still adhere to the <u>Johnson</u> test,[2] or combine the two tests by using the lodestar calculation and adjusting the resulting figure by reference to the relevant

---

2 In <u>Johnson</u>, the Fifth Circuit declared that the following factors should be evaluated when a court is ruling on a fee application: (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusions of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

13

Johnson factors. See e.g., In re Nine Associates, Inc., 76 B.R. 943 (Bankr. S.D.N.Y. 1987); In re Cuisine Magazine, Inc., 61 B.R. 210 (Bankr. S.D.N.Y. 1986); In re Affinito & Son, Inc., 63 B.R. 495 (Bankr. W.D. Pa. 1986).

46.     Time, Nature and Extent of Services, Results Obtained and Related Factors. Applicant maintained detailed time records which indicate the time spent and the nature of the work performed by Applicant for the benefit of the estate during the period covered by this Application. As Exhibit "A" reflects, with Applicant's counsel and services, the Debtor's case progressed along towards a successful conclusion while ending the tenancy of a difficult commercial tenant.

47.     The services rendered were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed. Whether reviewed individually as to each of the tasks described above or collectively as a whole, the time expended by Applicant has been reasonable and efficient to accomplish the needs of the Debtor and its estate in this Chapter 11 case.

48.     The Skill Requisite to Perform the Legal Services Properly. In order to perform the services and obtain the results required in its representation of the Debtor, legal skill and experience were required.

49.     Preclusion of Other Employment. Adequate representation of the Debtor in this proceeding has required a substantial commitment of Applicants time. Although Applicant was not precluded as a result of its representation of the Debtor from accepting other engagements,

---

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Johnson, supra, at 717-19.

matters in this Case were treated by Applicant in an expeditious and professional manner. Also, various matters on behalf of the Debtor required Applicant to devote considerable time, often to the preclusion of expending time on other active matters within Applicant's office.

50. <u>Time Limitations or Other Circumstances</u>. Many of the matters on behalf of the Debtor have required the necessity for rapid resolutions on an expedited basis, while being attentive to the needs and circumstances of the Debtor. Applicant kept all time deadlines imposed by the Court during her retention.

51. <u>Amounts Involved and Results Obtained</u>. Applicant through its services has endeavored in assisting the Debtor in confirming A liquidating plan of reorganization which pays unsecured creditors forty (40%) of their allowed claims.

52. <u>The Customary Fee</u>. Applicant has charged its regular hourly rate in this matter.

53. <u>Awards in Similar Cases</u>. The amount requested by Applicant is not unreasonable in terms of awards in cases of similar magnitude and complexity. The compensation requested by Applicant comports with the mandate of the Bankruptcy Code, which directs that services be evaluated in light of comparable services performed in non-bankruptcy cases in the community. The hourly rate requested by Applicant is billed by Applicant to both its court-approved and regular commercial clients. The hourly rates awarded in similar cases have been higher than that sought by Applicant.

54. <u>Whether the Fee is Fixed or Contingent</u>. Applicant's compensation in this Chapter 11 case is subject to the approval of the Court.

55. <u>The Experience, Reputation and Ability of the Attorneys</u>. The Applicant is experienced in matters of this kind. Joel M. Shafferman represented the Debtor exclusively for the period in which he is seeking compensation. Joel M. Shafferman is a 1985 graduate of Hofstra Law School, and has been practicing in the area of bankruptcy since graduating from law school. He was admitted to practice to both the Courts of this State as well as the United States District Courts for the Southern and Eastern Districts of New York in 1986. Joel M. Shafferman previously clerked for Honorable Marvin A. Holland, a United States Bankruptcy Judge in the Eastern District of New York. Joel M. Shafferman has represented debtors, creditors and trustees for more than twenty three (23) years and has litigated cases on behalf of debtors, creditors and trustees.

56. In reviewing the above-cited factors, it should be noted that almost every category cited by the foregoing authorities militates in favor of the award requested.

57. All of the professional services for which compensation is requested have been rendered on behalf of Applicant for the Debtor and not on behalf of any Creditor or other party.

**WHEREFORE**, Shafferman & Feldman LLP respectfully request that:

A. Its fees are approved in the sum of **$39,260.00** as an Interim Award of Compensation for professional services rendered by Applicant, as Counsel for the Debtor in this Chapter 11 case, during the Final Compensation Period;

B. It be reimbursed for the actual and necessary disbursements, in the amount of **$1,189.58** incurred during the Interim Compensation Period, and

C. It be granted such other and further relief as to this Court seems just and proper under the circumstances;

16

**DATED:**        New York, New York
            October 5 , 2015

                                                             **SHAFFERMAN & FELDMAN LLP**
                                                             **Counsel for the Debtor**
                                                             **1370 Fifth Avenue, 9th Floor**
                                                             **New York, New York 10010**
                                                             **(212) 509-1802**


                                                       **By: /S/ Joel M. Shafferman**
                                                               **Joel M. Shafferman**

                                                **Hearing Date & Time**
                                                **October 20, 2015 @ 10:00 am**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
In Re:                                                                      Chapter 11

**STAGE PRESENCE INCORPORATED,**            Case No.: 12-10525 (ALG)

                                       **Debtor.**
-----------------------------------------------------------X

## CERTIFICATION REQUIRED BY THIS DISTRICT'S GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS

        Joel M. Shafferman, makes the following certification pursuant to Local Rules for the United States Bankruptcy Court for the Eastern District of New York, and General Order 613, with respect to the Application of Shafferman & Feldman LLP ("S&F") for an award of Final Compensation for Fees and Reimbursement of Expenses (the "Application").

        1.        I am a member of the firm of S&F, counsel to Stage Presence Incorporated, the debtor and debtor in possession ("Debtor") in the above-captioned Chapter 11 Case. S&F has designated me, the responsibility for compliance with the Guidelines in this case.

        2.        I have read the Application. To the best of my knowledge, information and belief formed after reasonable inquiry, the Application complies with the mandatory Guidelines in all ways. To the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Guidelines. The fees and disbursements sought herein are billed at rates in accordance with the practices customarily employed by S&F and generally accepted

by S&F's clients.

   3. The fees and disbursements sought in the Application are billed at rates and in accordance with practices customarily employed by Applicant and generally accepted by Applicant's clients.

   4. In providing a reimbursable service, Applicant does not make a profit on the service, whether the service is performed by Applicant in-house or through a third party.

   5. I further state that the Applicant has provided the Debtor with billing updates on a periodic basis, in order to continually keep the Debtor informed about the accrual of fees and disbursements incurred by Applicant during the pendency of this case.

   6. No reimbursement for proof-reading services is sought by the Application.

**DATED:** New York, New York
     October 5, 2015

               **/S/ Joel M. Shafferman**
               Joel M. Shafferman (JMS-1055)